[L. A. No. 2472.   Department Two.—March 15, 1911.]

J. W. RIGGINS, Respondent, v. JOHN T. SWEATT, Appellant.

EXECUTED CONTRACT TO EXCHANGE PROPERTIES—PLAINTIFF RECORD OWNER OF DEFENDANT'S PROPERTY—POSSESSION—INEQUITABLE RELIEF TO PLAINTIFF.—Where under an executed exchange of real and personal properties, the plaintiff stands as the record owner of all the real and personal property derived from the defendant, and has entered into possession and control of at least a part thereof, has collected debts, and made contracts as to its management; and seeks the aid of a court of equity to cancel merely his own deed and bill of sale to defendant, which has been granted, it is held to be manifestly inequitable that he shall thus be restored to everything that he has parted with while retaining the title to defendant's property.

ID.—RULE OF EQUITY AGAINST PIECEMEAL. — Equity, having acquired jurisdiction, does not do justice by piecemeal.

ID.—CONTRACT OF DEFENDANT TO CLEAR TITLE AND PAY EXCESS OF ENCUMBRANCES—BREACH—EQUITABLE REMEDY.—Where there was an excess of encumbrances on defendant's property, some of which had been paid, but not canceled, and he was to clear the title from such paid encumbrances, and to pay the excess within a certain time, which he had failed to do, on demand, even though the plaintiff shows no desire to rescind, and makes no offer to restore, yet an equitable remedy must be either for a rescission, with such an accounting as may be necessary to adjust loss or damage, or a decree limiting the time within which defendant must fulfill his contract to pay off his excess indebtedness and clear the clouds upon his titles, or upon failure to do so, to direct a cancellation of the deeds and contracts, and an adjustment of rights.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Avery & French, for Appellant.

Morton, Pruitt & Goodrich, for Respondent.

HENSHAW, J.—This action is for the cancellation of a deed and a bill of sale executed by plaintiff to defendant Sweatt

and placed in escrow in the hands of J. C. Odell, upon the ground that in the consummation of a conspiracy between the defendant Sweatt and the escrowee, the latter prematurely and fraudulently caused the instruments to be recorded. The appeal is from the judgment upon the judgment-roll alone.

The findings are voluminous. From them the story of the transactions between the parties is to be gathered and their legal rights determined. In July, 1908, plaintiff employed Odell to negotiate the exchange of his ranch in southern California and the personal property thereon for a ranch in Ward County, Texas, with the personal property thereon, and six other lots of land, upon one of which was a store with its merchandise, in the village of Grand Falls, and upon certain others, cotton gins. The Texas property was owned by defendant Sweatt and his sons. After negotiation a contract was entered into between Riggins and Sweatt on August 11th. This contract was dictated by Riggins. Riggins's California land, with the personal property thereon, was estimated to be worth about one hundred and forty thousand dollars, and was encumbered by a mortgage for about twenty thousand dollars. Sweatt was to take the California property and assume the payment of the mortgage. Sweatt, in turn, was to convey the Texas lands, the store, the gins, and the personal property in exchange. It was estimated that the encumbrances upon the Texas property exceeded the encumbrances on the California property by about thirty-six thousand dollars. Riggins was to assume the payment of this excess and to protect him in this assumption of excess indebtedness, Sweatt agreed to turn over to Riggins notes and book accounts aggregating thirty thousand dollars, the growing crops on the Texas lands estimated to be worth ten thousand dollars, and further to secure him by an indemnity bond in the sum of ten thousand dollars. Sweatt was to "furnish an abstract of title brought down to date showing good title to all the land conveyed." This contract of August 11th concluded with the following: "It is understood and agreed that the sole condition of this contract is the inspection, and acceptance or rejection of the same by said Riggins." A few days thereafter Riggins went to Texas, inspected and evaluated the properties. He was accompanied by Mr. Odell and by a Mr. Ottis, an attorney at law familiar with Texas land titles. Riggins pronounced himself satisfied,

and thereupon while in Texas, proposed a written modification of the original contract, which Sweatt accepted. The modification went to certain matters not essential to this consideration, Riggins agreeing to take the crops, notes, and accounts absolutely and to assume fifty-six thousand dollars of Sweatt's indebtedness as against the assumption by Sweatt of twenty thousand dollars' indebtedness on the California property, and Sweatt was released from the necessity of giving any indemnity bond or guaranty for the excess indebtedness. Riggins further stipulated that upon the acceptance by Sweatt of the modified proposition they should "immediately draw up and exchange papers." Thereupon, on the same date, August 18, 1908, at Grand Falls, Texas, deeds and bills of sale from the respective parties were delivered to Odell and the following instrument designated "Escrow Instructions" was executed:—

"GRAND FALLS, Aug. 18th, 1908.

"MR. J. C. ODELL,

"Grand Falls, Texas.

"Dear Sir:—

"You are hereby instructed by the undersigned parties hereto to deliver to J. W. Riggins, deeds by Jno. T. Sweatt and Sweatt Bros., of even date herewith, for 2165 more or less, acres of land in Ward County, Texas, together with two bills of sale conveying chattels, etc., upon approval of title and examination of records by J. C. Odell and to deliver to Jno. T. Sweatt a certain deed of 735 acres, more or less, situated in Los Angeles County, California, together with a bill of sale for chattels now upon the premises there.

"JNO. T. SWEATT,

"J. W. RIGGINS,

"SWEATT BROS., by E. V. SWEATT."

Later, upon the same day after the escrow instructions had been signed, and the deeds and other papers placed in Odell's hands, Riggins himself signed and procured Sweatt to sign a statement prepared by Riggins to the following effect:—

"It is mutually agreed and understood by and between the parties to the above contract that all of its stipulations and provisions have been performed and carried out in all things to the entire satisfaction of the parties to this contract and consummated by the signing of an agreement hereto attached

CLIX Cal.—36

and signed at Grand Falls, Texas, on the 18th day of August, 1908.

"JOHN T. SWEATT,

"J. W. RIGGINS."

It is to be noted that the escrow instructions call upon Odell to deliver the papers upon his own "approval of title and an examination of records." To this arrangement Odell demurred, saying that he was not a lawyer, but (we quote from the findings) "Riggins told him to go ahead and examine the abstract to be furnished by Sweatt to his land and get the approval of said Ottis, who, it was stated by Riggins in the conversation, was familiar with the titles of land in that vicinity. J. W. Riggins did not tell Odell to employ any lawyer to examine the titles to Sweatt's land, but he did say that it was not necessary to put him to that expense." The next morning the store and its merchandise were turned over to Riggins by Sweatt with the consent of his sons, Sweatt Brothers, who were the owners thereof and who were also the owners of the notes and accounts. Riggins immediately put one White in charge with instructions to manage the business, collect the accounts, etc. He had White send out with the consent of Sweatt Bros. a printed notice to all the debtors of Sweatt Bros. to the effect that the business had been sold and transferred to J. W. Riggins, which notice was followed on the same sheet with a letter signed by Riggins demanding that the debtors come forward at once and pay or make arrangements for the payments of their accounts. The book accounts amounted to about fifteen thousand dollars and the notes to about the same sum. Riggins also at this time took charge of the two cotton gins and contracted to have them operated for his account. Mr. Odell and Mr. Ottis went to Barstow, the county seat, ordered an ab: and meantime proceeded to examine the records. The finds that the escrow instructions did not include an exa tion of the title to the California land nor to the six lots. was limited therefore to an examination of the title of Texas ranch of 2165 acres. As a result of their examina Odell and Ottis placed on record the deeds and bills of s from Sweatt and Sweatt Bros. to Riggins, and Odell return to his home in California where he also placed of record deed and bill of sale of Riggins to Sweatt. The Odell-O examination of the Texas properties at Barstow was m

partly from the records and partly from an abstract prepared
for them. Ottis "O. K'd" and approved this abstract, after
which Odell filed the deeds for record. The court, however,
finds that they did so with knowledge that there existed upon
the records, liens, encumbrances, and clouds upon the property
to the extent of seventy-eight thousand dollars, but this total
includes liens, encumbrances, and clouds upon the six lots
which were not within the purview of the examination which
Odell and Ottis were to make, and includes, moreover, clouds
which were without substance, consisting as they did of ap-
parent liens which had been fully paid but which had not for-
mally been released of record, as to which latter, in several
instances, satisfactory evidence of their payment was given to
Ottis and Odell. The charge in the complaint, it will be re-
membered, was of conspiracy between Odell, Ottis, and Sweatt,
a conspiracy charged to have been directed against Riggins, but
the court finds no such conspiracy to have existed between
these men or any two of them. The verified complaint of Rig-
gins also charged that Mr. Odell had been specially instructed
not to approve the title until he had had the abstract examined
by a Mr. Starley, an attorney, whom, it was alleged, Mr. Rig-
gins had theretofore selected to pass upon the title. The court
finds to the contrary, that Riggins objected to the employment
of any attorney saving Mr. Ottis. The complaint also charged
that in furtherance of the conspiracy invalid deeds from
Sweatt and Sweatt Bros. were executed and accepted by Odell,
Riggins averring that among the deeds were three quitclaim
deeds to a large part of the land. The court, however, found
against these charges of conspiracy and collusion, declaring the
deeds to be sufficient in form; that amongst them were two
warranty deeds, one for 1625 acres from John T. Sweatt, and
the other for the remaining 540 acres and the six lots from
Sweatt Bros., whom the court finds were the owners thereof.
The court further finds that all the deeds were delivered to
Odell in the presence of Riggins and are the exact instruments
referred to in the escrow agreement as "deeds from Jno. T.
Sweatt and Sweatt Bros." In the original complaint Riggins
had alleged that Odell had fraudulently secured possession of
his deed to Sweatt. The findings establish that this charge
also is unfounded. As to the memorandum which Riggins him-
self had dictated and secured Sweatt to sign on the eighteenth

day of August, and which, as above quoted, is to the effect that
the contracts had been fully consummated to the satisfaction
of the parties, the court found that this was signed by Sweatt
at Riggins's solicitation, but was written only on the copy of
the contract which Riggins himself kept and not upon the copy
Sweatt kept, and, notwithstanding that it was signed by both
Riggins and Sweatt, Riggins tore it off without the knowledge
and consent of Sweatt prior to the trial of the action and made
no reference to it in his complaint. But the court did find
that Odell and Ottis proceeded to carry out the escrow instruc-
tions "with the utmost haste." Odell immediately, or very
shortly after arriving at Barstow, placed the bill of sale on
record from Sweatt and Sweatt Bros. to Riggins, though not
the deeds, which were not recorded until after the completion
of the examination of title. The court finds that Odell did not
act in good faith with Riggins in filing the two bills of sale, in
that he filed them before knowledge of the condition of the
title to the real property, but in view of the fact that Riggins
had immediately taken possession of the store and the gins
and was exercising acts of ownership over them, some color,
at least, is given to Mr. Odell's explanation that he filed these
bills of sale for the protection of Riggins's possession. The
court also found, as has been said, that Odell and Ottis ap-
proved the title to the land, when the record showed, and they
knew that the records showed encumbrances to the extent of
seventy-eight thousand dollars, but the abstract which was fur-
nished to them and upon which they acted, and which, in turn,
was sent to Riggins, did not show encumbrances to exceed
sixty-five thousand dollars, and, of these, several thousand
dollars were mere clouds, since the indebtedness which they
represented had been paid and they had been shown the re-
ceipts and canceled notes and other evidences of payment.
In its conclusions of law the court declares that "Odell was
guilty of a flagrant violation of his escrow instructions and the
contracts between J. W. Riggins and John T. Sweatt" in filing
for record the deed from Riggins to Sweatt, and the same con-
clusion of law is declared touching Odell's filing of the bill of
sale from Riggins to Sweatt.

Upon these and other findings hereafter to be adverted to,
the court concluded that the deed and bill of sale from Riggins
to Sweatt never became operative or binding; that the ex-

change of the properties between Riggins and Sweatt had never been effectuated or consummated, and entered its decree cancelling the recordation of the Riggins's deed and bill of sale.

The findings in this case deal with two separate transactions which logically should be separately considered. The first, and the first to invite attention, are those dealing with the violations by Odell of his escrow instructions, by which violations the court finds that the deed and bill of sale from Riggins to Sweatt were improperly placed of record. These findings are based in no small part upon the idea seemingly that Odell was not governed by the escrow instructions alone, but that because he had knowledge of the terms and conditions of the contract of August 11th, modified by the contract of August 18th, he was governed by those terms and conditions also. This argument, however, is not pressed to its logical conclusion, and necessarily could not be, because if Odell were bound to see that the contract of August 11th was carried out before he placed the deeds and bills of sale of record, it became his duty to investigate the title to the six lots which the court finds were not included within his escrow instructions, and it was equally his duty to see that all the promissory notes were delivered by the Sweatts to Riggins, yet it is not contended that such delivery was a condition precedent to his right to act under the escrow instructions. Much stress in this connection is placed upon the fact that the contract of August 11th, as above quoted, provided that Sweatt was to furnish an abstract of title brought down to date showing good title to all the land conveyed, and by the finding of the court also, as above quoted, that Riggins told Odell "to go ahead and examine the abstract to be furnished by Sweatt to his land." Yet the escrow agreement itself, and the memorandum which Riggins himself procured Sweatt to sign, would seem, if they meant anything, to imply a waiver of the requirement that Sweatt should himself furnish any abstract, since by the terms of the escrow instructions Odell is to deliver the deeds and bills of sale, not upon the approval of any abstract furnished by Sweatt, but upon "his own approval of title and examination of records," and the memorandum agreement which Riggins induced Sweatt to sign expressly declares that the contract of August 11th as to all its stipulations had been performed and carried out "to the

entire satisfaction of the parties to this contract and consummated." When it is considered that Odell was not a lawyer, that he was told by Riggins to look to Ottis for the approval of the title to the Texas Ranch, that he did look for this approval and filed the deeds for record only after the abstract of title had received Ottis's approval, and that the court distinctly finds that there was no conspiracy to wrong or defraud Riggins in any of the acts of Ottis and Odell, it would be a matter of much difficulty to sustain a judgment ordering a cancellation of the documents upon these findings alone.

But there now come up for review the findings upon the second branch of the case, and these have to do with a new contract entered into by Sweatt and Riggins after the escrow instructions had been given, and indeed, after Odell had executed those instructions by placing the deeds and bills of sale of record.

The findings under this second branch of the case are aside from the consideration whether or not Odell obeyed his escrow instructions. They deal with the rights of Sweatt and Riggins under a contract which they entered into on the twenty-eighth day of August. From them it appears that Riggins was in Barstow, the county seat, on the twenty-seventh day of August and learned that the deeds and bills of sale to him had been recorded, and since it was not to be supposed that the escrowee would execute but a part of his concurrent instructions, there was at least notice conveyed to him that his own deed and bill of sale had been or would be recorded in California. Before this date Sweatt had furnished Odell with the abstract and Odell had it in his possession, but it was not delivered to Riggins until the first day of September. Riggins, therefore, procured his own abstract, which showed all the encumbrances upon the Sweatt property, and therefrom discovered that the recorded liens exceeded fifty-six thousand dollars. Thereupon he entered into another contract in writing with Sweatt. The previous contracts are referred to by which the lands and property in Ward County "belonging to John T. Sweatt and Sweatt Brothers" were to be conveyed to him for his California property. The contract then proceeded: "and whereas, it now develops that the said John T. Sweatt owes a further indebtedness in the state of Texas or growing out of his business conducted at Grand Falls, Ward County, Texas, over and above

the said sum of fifty-six thousand dollars, and said Sweatt now wants said Riggins to assume said additional indebtedness, and whereas the said original contract referred to providing that said sales and transfers are made with the understanding and guarantee by each of said parties that the titles to the lands and property conveyed by each are good and valid titles, free of any and all encumbrances except as herein specified;

"Now, therefore, know all men by these presents, that for the purpose of arranging said additional indebtedness it is hereby agreed as follows:—

"That said Riggins shall assume and pay said additional indebtedness, now estimated by us at the sum of $6,143.00, and that the said sum or amounts so paid by said Riggins for said Sweatt shall be repaid to said Riggins by said Sweatt as follows: One half of said amount on January 1st, 1910, and one half January 1st, 1911, interest from this date at the rate of eight per cent per annum. The said amounts shall be evidenced by mortgage notes and secured by a proper lien on the said land herein referred to as transferred by J. W. Riggins and situated near Covina, Los Angeles County, California, said lien to be in proper legal and binding form and second only to an indebtedness now in said property of twenty thousand dollars. Said amounts shall be definitely determined and said lien duly executed within fifteen days after this date.

"It is further understood and agreed that each party has guaranteed to the other party that the titles to be conveyed by each are good and valid and free from all liens except as on said contract specified, but that the parties hereto have not at this time been furnished with proper abstracts or other evidence of the condition of the respective titles, and that this agreement and the contract referred to are made subject to the validity of said titles as in said original contract provided."

At the time that this contract was entered into both of the parties knew, or at least were chargeable with knowledge, that their respective deeds and bills of sale had been placed of record. Their rights, then, are to be determined by the answer to the question whether the terms and conditions of the agreement of August 28th were performed by Sweatt.

1. Book accounts to the proximate amount of fifteen thousand dollars were made over to Riggins, and of the promissory notes to an equal amount, all but thirty-eight hundred dollars

of them, properly indorsed, were sent by mail from Barstow by Sweatt Brothers to White (Riggins's agent in charge of the store) at Grand Falls. The rest of the notes, amounting to thirty-eight hundred dollars, were on deposit with a bank and a mercantile house as collateral for a part of the debt which Riggins was to assume. Riggins was informed of these facts and told where the notes were on deposit, but they were not formally indorsed to him.

2. It appears that the actual unpaid obligations against the real properties showing of record amounted to about $59,369, a sum within the limit of fifty-six thousand dollars, and the later $6,143 which, by the contract of August 28th, Riggins was to assume, but the court finds that there was an additional unsecured indebtedness of forty-four hundred dollars. This, added to the valid existing claim calculated at $59,369, would make an excess of $526 over the total which Sweatt had agreed to assume.

3. In addition to the valid subsisting indebtedness against the properties, there were the clouds of apparent liens standing unreleased on the records. In one instance a debt of ten thousand dollars secured by a trust-deed appeared. The debt had been paid, but the record of the obligation had not been satisfied. There were other instances of like character which it was clearly the duty of Sweatt to have caused to be cancelled from the records.

4. As to the land itself, the court found that title to five hundred and forty acres was in Sweatt Brothers and not in Sweatt; that there was a suit involving the title to an undivided one third of thirty-six acres; and the descriptions of a two-acre tract and a sixty-four-acre tract were invalid.

No weight can attach to the fact that title to part of this land stood in the name of Sweatt Brothers, the defendant's sons, since the later contracts contemplated deeds from them, and their deeds, sufficient in form and substance, were actually made. We need not stop to analyze the descriptions in the deeds which the court finds were so radically defective as not to convey title, for it is apparent under all the findings, and it is the findings alone which we have before us, that Sweatt had failed to live up to the terms of the last contract of August 28th after specific demand upon him made by Riggins on September 9th that he do so.

But in this situation what is the relief to which Riggins is entitled? He stands as the record owner of all the real and personal property of Sweatt and of the Sweatt Brothers to which reference has been made. He has entered into possession and control of at least a part of that property, has collected debts and made contracts touching its management. He seeks the aid of a court of equity and asks merely that his own deed and bill of sale to Sweatt shall be canceled, and this relief the court accords him. But it is manifestly inequitable that he should thus be restored to everything with which he has parted, while retaining the record title to all of the Sweatt real and personal property. Equity, having acquired jurisdiction, does not do justice by piecemeal. Riggins himself is not seeking to rescind, and seemingly disclaims any desire for a rescission, since he makes no offer to rescind or restore, and yet an equitable decision in a case such as this could only be one of two kinds, either for a rescission with such an accounting as might be necessary to adjust loss or damage, or a decree limiting the time within which Sweatt may fulfill his contract, pay off his excess indebtedness, and discharge the clouds upon his titles, or upon his failure so to do, a direction for further proceedings looking to a cancellation of the deeds and contracts and an adjustment of the respective rights of the parties.

The judgment is therefore reversed for further proceedings in accordance with the foregoing.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.