[Civ. No. 18599. Fourth Dist., Div. One. Feb. 27, 1980.]

J. A. MACFARLANE, Plaintiff and Appellant, v.
JUDITH C. PETERS, Defendant and Respondent.

628

COUNSEL

Marsh, Graves, Fischbeck & Welch and Edward E. Marsh, Jr., for Plaintiff and Appellant.

Smith & Biggins, Smith, Bollman, Mogilner & Knoepp, Todd Smith and Terry J. Knoepp for Defendant and Respondent.

OPINION

**WORK, J.***—Multiple parties petitioned for a determination of their respective interests in the same real property. Exercising its equitable powers, the trial court reformed a treasurer's deed, adjusted certain monetary claims, rejected 2 claimed easements and quieted title to 5 contiguous unimproved lots forming a 125-foot square parcel fronting on Archer Street in Pacific Beach. Only MacFarlane appeals.

At the time of trial, a partial overlay of the separate recorded interests on a parcel map of the 125 by 125-foot property reveals the problem. We attach a sketch (see appendix, *post*, p. 634).

*Assigned by the Chairperson of the Judicial Council.

Not surprisingly, through the years this litigation has come to be known as the "British Flag" case among courthouse regulars.

Appellant MacFarlane claims an absolute fee in a continuous strip .0108 inches in width running the entire perimeter of the property, plus 3 additional equidistant strips .0108 inches in width running east and west across the entire parcel. This effectively prevents access to the property and chops it into portions 25 feet by 31-1/3 feet.

The resulting pattern created lot splits prohibited by existing zoning ordinances (§ 102.0103, San Diego Municipal Code), since there is no frontage, no access, and the "lots" are smaller than allowed. As originally issued, the deed prevented use or sale of the property by either owner. Southern Adjustment Bureau, Inc. claims the "X" on the attachment. Each intersecting line of the "X" represents a 10-foot wide claimed easement.

Not depicted is a narrow five-bedroom home which was moved onto the parcel and permanently affixed so a portion extended into each lot. This voluntary and unrequested act gave physical expression to the claim of a Mr. and Mrs. Schmidt. At trial, they alleged substantial "improvements" to the parcel as "good faith providers."

Last, ownership to the entire parcel was claimed by respondent Peters who purchased the interest of John C. Myette, deceased, at an estate sale.

The factual background regarding the methods used by the Schmidts and Southern Adjustment Bureau in attempting to stake their respective claims is a testament to human ingenuity and persistence. Since neither has appealed, we do not set out these details but note our concurrence with Judge Levenson's comment when apprised of them, "It's unbelievable." We refer those interested to the trial court record.

In 1940, Mr. Myette and his wife acquired clear title to each lot. No improvements were made by them. In 1943, they permanently moved to New England where Mrs. Myette died in 1966 and her husband died in 1975.

The court found, and it is not contested on appeal, John Myette was legally incompetent during all the proceedings which resulted in claims adverse to his ownership.

Myette paid no property taxes after his wife died. A street improvement bond assessment against the entire parcel (Improvement Act of 1911) came into default in the amount of $1,127.40. In 1971, the property was offered at public sale to satisfy the bond delinquency only.

The terms of the sale were controlled by Streets and Highways Code section 6509 which, at that time, permitted no bids in excess of the delinquent amount. A successful purchaser was the one "...who shall take the least amount of the lot or parcel."

Although there were several bidders, the most spirited were MacFarlane and Southern Adjustment, each successively agreeing to take smaller portions until, at last, MacFarlane prevailed with his offer to take nine-tenths of one square foot of the tract. This is equivalent to an area .0000575 percent of the whole which, in the absence of redemption, left Myette with an unusable .9999425 percent interest because of the configuration selected.

MacFarlane candidly admits his "design" was to deny Myette access to the property. Appellant proceeded to pay the back taxes and those accruing up to the date of trial on the entire parcel.

Judge Levenson reformed the treasurer's deed by striking the property description and replacing it with "an undivided .0000575 interest in said lots 46 through 50,..." He then quieted title to this described interest in MacFarlane and impressed a lien in his favor on the entire parcel for monies advanced on taxes.

Peters' interest was quieted to an undivided .9999425 interest in the parcel. All other interests were denied.

■ Reformation of a deed is equitable relief permitted for mutual or unilateral mistake, fraud (*Baines v. Zuieback* (1948) 84 Cal.App.2d 483, 489 [191 P.2d 67]) or *unconscionable conduct even though not fraudulent or illegal* (*DeGarmo v. Goldman* (1942) 19 Cal.2d 755 [123 P.2d 1]), if the rights of innocent third party purchasers for value are not prejudiced. (Civ. Code, § 3399.)

■ While sitting in its equitable capacity, a court may avail itself of powers broad, flexible and capable of being expanded to deal with novel cases and conditions. (*Southern Pacific Co. v. Robinson* (1901) 132 Cal. 408, 412 [64 P. 572].)

■ Although MacFarlane's acts may be legal, in and of themselves, where they are done with a fraudulent or oppressive intent, equity will intervene. (*Weinstock, Lubin & Co.* v. *Marks* (1895) 109 Cal. 529, 543 [42 P. 142].)

■ While the facts in this case are without reported precedent, such lack is no deterrent to equitable relief. (*Roman v. Ries* (1968) 259 Cal.App.2d 65, 70 [66 Cal.Rptr. 120].)

■ Above all, Judge Levenson's decree complies with the maxim "Equity, having acquired jurisdiction, does not do justice by piecemeal." (*Riggins* v. *Sweatt* (1911) 159 Cal. 559, 569 [114 P. 824].)

■ We examine MacFarlane's contentions with the above rules in mind.

First, appellant argues he should be entitled to purchase Peters' interest since she could not have acquired it had the 1971 assessment sale been conducted under the terms of the post-1975 law which now allows overbidding on the entire parcel with the excess money going to the defaulting landowner. This argument is without merit since appellant well knew what he was buying in 1971, i.e., nine-tenths of one square foot of the whole.

Alternatively, MacFarlane contends "at the very least" the specific strips of land conveyed to him by the treasurer's deed should be confirmed to him because the validity of that deed may not be "contested or questioned in any proceeding," except within six months from its date of issuance. (Sts. & Hy. Code, § 6571; *Union Paving Co.* v. *East Del Paso Heights* (1963) 217 Cal.App.2d 772 [31 Cal.Rptr. 915].)

Such a result would be the "piecemeal" approach disapproved in *Riggins* v. *Sweatt, supra*, 159 Cal. 559. We note the court's action did not declare the deed invalid insofar as it purported to convey an interest equivalent to that "purchased" at the sale.

We agree with the trial court the Legislature did not design the sale procedure so as to allow a successful bidder to obtain a minute interest in real property then gerrymander it to deprive the major property owner of any use whatsoever. Such an unconscionable advantage over a legally incompetent landowner falls well within the area to which the court will address its equitable powers.

The described property is of absolutely no use to MacFarlane except to prevent any use of the remainder of the property.

MacFarlane stated he selected this particular configuration specifically in order to force the landowner, whenever he appeared, to negotiate on his terms.

*Union Paving Co.* v. *East Del Paso Heights, supra,* 217 Cal.App.2d 772, does not rule out this reformation. There the contestant attempted to set aside the deed for lack of notice. The equitable considerations present in this case were absent from *Union Paving.*

We find Judge Levenson's ruling to be consistent with the purposes of equity. It completely disposes of the conflicting claims; it confirms rights in those parties who have legal interests to the extent deemed legitimate; it restores the lots to a salable and usable state, and it permits monetary reimbursement to those entitled.

By Judge Levenson's judicious exercise of equitable power, the "British Flag" case has been finally furled.

Judgment affirmed.

Cologne, Acting P. J., and Wiener, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1980.

APPENDIX