745 P.2d 372

**PLAZA NATIONAL BANK,
Plaintiff–Appellant,**

v.

**William VALDEZ and Susan Valdez
d/b/a Valdez Salsa Natural, T.M. and
The United States of America, Defendants–Appellees.**

No. 16519.

Supreme Court of New Mexico.

Nov. 2, 1987.

Thomas M. Brown, Albuquerque, for plaintiff-appellant.

George Perez, Bernalillo, for defendants-appellees.

**OPINION**

WALTERS, Justice.

This case arises out of a foreclosure action brought by plaintiff bank. After a judgment and decree of foreclosure were entered, and subsequent to a judicial sale, the district court granted defendants' motion for extension of the redemption period. The bank appeals the extension. We affirm.

On November 9, 1983, defendants William and Susan Valdez, d/b/a Valdez Salsa Natural, T.M., signed a six-month promissory note in favor of Plaza National Bank for $42,117.98. The note was secured by a first mortgage on some vacant land, and a second mortgage on a residence and commercial building which was subject to a first mortgage held by the Small Business Administration (SBA).

The Valdezes defaulted on the note. On November 1, 1985, when a judgment and decree of foreclosure were entered in favor of the bank, foreclosure of the SBA's interest was not mentioned or litigated. The decree provided that the special master should issue his special master's deed after the sale had been confirmed by the court, whereupon the purchaser of the properties should hold title free and clear, subject to the Valdezes' right of redemption for thirty days following the judicial sale. The sale was held on December 2, 1985, the bank purchasing the property for $56,475.37. The special master's report of sale was approved by court order on December 10, 1985.

On December 16, 1985, the Valdezes notified the bank of their intention to redeem the property, probably on December 20th or 23rd. On December 17, 1985, the bank, in a letter to the Valdezes' attorney, set

forth the amount of the payment necessary to accomplish the redemption. Valdezes did not, within the following week, tender any redemption amount to the bank. Thereafter, on December 30, 1985, the bank paid $27,189.49 to the SBA and obtained a release of that mortgage.

On January 2, 1986, the Valdezes filed a motion for an extension of the redemption period, claiming that the payment by the bank of the SBA mortgage was not within the parties' agreement and placed upon them an unconscionable repayment burden. Following a hearing, the trial court granted the Valdezes an additional thirty-day redemption period. The bank claims that the trial court lacked subject matter jurisdiction to hear the motion.

**Subject Matter Jurisdiction**

Plaza National argues that the trial court lacked subject matter jurisdiction because, under NMSA 1978, Section 39–1–1:

> *Final judgments* and decrees * * * *shall remain under the control of [the district] courts for a period of thirty days* after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which may have been filed within such period, directed against such judgment. (Emphasis added.)

It is the bank's contention that the judgment and decree of foreclosure of November 1, 1985, was the final judgment. Thus, according to the bank, the district court lost subject matter jurisdiction of this case on December 1, 1985, and could not properly hear the motion for extension of the redemption period filed by the Valdezes on January 2, 1986.

This Court, in *Speckner v. Riebold,* 86 N.M. 275, 523 P.2d 10 (1974), noted that in a foreclosure suit two separate adjudications are made:

> The initial judgment operates to foreclose the mortgage. It declares the rights of the parties in the mortgaged premises. If no appeal is taken from that portion of the judgment, it becomes final unless modified under ... [the statute allowing] trial courts control over their judgments for a period of thirty days.

The second part of the judgment directs that the mortgaged property be sold, and fixes the manner and terms of the sale. It is interlocutory. A district court has a continuing supervisory jurisdiction over mortgage foreclosure sales. * * * That part of the decree of foreclosure that directs the manner and terms of the sale of the mortgaged property *does not become a final judgment until the judicial confirmation of the sale, whereupon it becomes final.* (Emphasis added.)

*Id.* at 277, 523 P.2d at 12; *accord Waisner v. Jones,* 103 N.M. 749, 713 P.2d 565 (Ct. App.1986) (order confirming the foreclosure sale is a final appealable order if rights of the parties to the proceeds of the sale are thus determined).

Here, the order approving the judicial sale was entered on December 10, 1985. It provided:

> This matter came before the court on motion of ... [the] Special Master, the Report of the Special Master and the Special Master's Deed was submitted therewith and the court is fully advised in the premises.
>
> IT IS ORDERED:
>
> The report of the Special Master be and hereby is approved, confirmed and ratified.
>
> 2. The Special Master be and hereby is discharged.

▮▮▮ The order was no longer interlocutory, *see Speckner,* 86 N.M. at 277, 523 P.2d at 12, but, as of December 10th was a final judgment determining the rights of the parties. *See Waisner,* 103 N.M. at 749, 713 P.2d at 565. A judgment or decision is final if all issues of law and fact necessary to be determined are in fact determined, and the case is completely disposed of so far as the court has the power to dispose it. *Cole v. McNeill,* 102 N.M. 146, 147, 692 P.2d 532, 533 (Ct.App.1984). The district court had control over the final judgment for thirty days from the date the foreclosure sale was confirmed—thus, until January 9, 1986, because, under *Speckner,* there was no final sale and no final judgment until December 10th. The motion filed by the Valdezes on January 2, 1986,

was thus timely and was properly within the court's jurisdiction.

**Right of Redemption**

When the bank became the purchaser at the judicial sale on December 10, 1985, all of the rights of the parties merged and passed to the bank as purchaser, excepting only the sole right of the mortgagor to redeem—a right which did not arise out of the mortgage or the decree, but a right extended by statute. *Ulivarri v. Lovelace,* 39 N.M. 36, 38, 38 P.2d 1114, 1115 (1934). Under that right the mortgagor was in a position to defeat the title of the purchaser. *Id.* The redemption statute fixes the time within which redemption may be made, and it has been held that a statute of redemption may not be enlarged by judicial interpretation. *Union Esperanza Mining Co. v. Shandon Mining Co.,* 18 N.M. 153, 165, 135 P. 78, 80 (1913).

The judgment and decree of foreclosure filed November 1, 1985, set forth a one-month right of redemption from the date of sale, in accordance with the terms of the mortgage. But a redemption may not even be attempted until a transfer of title has been made, and the special master could not execute a valid deed until the sale became final and had been court approved. Consequently, the Valdezes' right to redeem the property under the judgment of foreclosure extended until at least January 9, 1986, the earliest date upon which the sale was effective. Giving effect to the ruling of *Speckner* regarding a final judgment only upon confirmation of the sale, there is no room to argue, as we have observed, that the court was without jurisdiction to entertain the motion filed on January 2, 1986. That filing was well within the thirty-day period under Section 39–1–1.

■ The question before us, then, is whether *in equity* the district court had discretion to extend the Valdezes' time in which to redeem the property. In order to entertain a request for equitable relief there first must be some showing of wrongful conduct on the part of the person against whom relief is sought. *See Richardson v. Pacheco,* 35 N.M. 243, 294 P. 328 (1930). In *Richardson,* the court refused to grant an extension after expiration of the statutory period because the debtor tendered payment to a party other than the purchaser. The Court there stated that "the statute gives the mortgagor nine months in which to recover his property. * * * He who waits until the last day to seek out the purchaser takes the risk of missing him." *Id.* at 245, 294 P. at 329. In both *Union Esperanza Mining Co.,* 18 N.M. at 165, 135 P. at 80, and *Richardson,* 35 N.M. at 245, 294 P. at 329, the Court rejected the authority of an out-of-state case allowing redemption on equitable grounds after the expiration of the statutory period, in the absence of fraud or mistake.

Some jurisdictions have held that courts in equity may extend the time to redeem if appropriate under the circumstances. In *Southern Idaho Prod. Credit Ass'n v. Ruiz,* 105 Idaho 140, 666 P.2d 1151 (1983), the debtor's incompetency at the time of the foreclosure judgment was held to fall within the meaning of "other circumstances," and justified the equitable extension of his right of redemption. In *First Fed. Sav. & Loan Ass'n v. McKain,* 5 Kan.App.2d 387, 617 P.2d 583 (1980), the debtor tendered payment five days before expiration of the statutory period and, even though two days later the purchaser increased the amount due which the debtor did not pay until fifty-eight days after the period had ended, the court extended the redemption period on equitable grounds.

In the instant case, the Valdezes were advised by the bank they could redeem the property for $56,803.83. That amount was confirmed by the bank's letter of December 17, 1985. Based on the letter, the Valdezes obtained a promise for financing of that amount so they could effectuate payment before the redemption period expired. The district court found that Valdez was ready, willing and able to pay the agreed-upon amount. On December 30, 1985, however, the bank paid SBA approximately $27,000 for the release of its mortgage, thereby increasing the amount of redemption. Defendants were unable to raise sufficient funds to pay the additional amount and, before the redemption period terminated, they moved for an extension of the time within which to redeem.

Sitting in its equitable capacity, a court may avail itself of those broad and flexible powers which are capable of being expanded to deal with novel cases and conditions. *See MacFarlane v. Peters*, 103 Cal.App.3d 627, 163 Cal.Rptr. 655 (1980). Equity has the inherent power to supply a method in any suit to protect the rights of all interested parties. *Stovall v. Vesely*, 38 N.M. 415, 418, 34 P.2d 862, 864 (1934). That the facts of a case are without reported precedent should be no deterrent to the granting of equitable relief. *MacFarlane*, 103 Cal. App.3d at 627, 163 Cal.Rptr. at 655.

The bank's actions, although legal, subjected the debtors to an extreme and unnecessary burden. As the trial court was entitled to find, the Valdezes, ready, willing and able to pay the quoted $56,803.83, were unable to obtain the additional $27,000 that was unexpectedly imposed upon them just days before the redemption period would expire. To remedy the unconscionable advantage gained by the bank immediately prior to the expiration of defendants' redemption period and before any demand had been made by SBA for payment of its mortgage, the trial court acted well within its equitable jurisdiction.

> It [equity] will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And once rightfully possessed of a case it will not relinquish it short of doing complete justice.

*Ortiz v. Lane*, 92 N.M. 513, 519, 590 P.2d 1168, 1174 (Ct.App.1979) (Hernandez, J., concurring) (quoting from *Merrick v. Stephens*, 337 S.W.2d 713, 719 (Mo.App.1960), and adding emphasis to original).

We AFFIRM the judgment of the district court and remand for such further proceedings as are necessary.

SOSA, Senior Justice, and RANSOM, J., concur.