385 P.2d 956

**NATIONAL AMERICAN LIFE INSURANCE COMPANY, a Louisiana Corporation, Plaintiff-in-Error,**

v.

**Jesse E. BAXTER, Lawson Montieth, N. Roy Kramer, Nathan Lamb and Wade Campbell, Defendants-in-Error.**

**No. 7134.**

Supreme Court of New Mexico.

Sept. 16, 1963.

Stephenson & Olmsted, Santa Fe, for plaintiff in error.

Merrill L. Norton, Barton L. Ingraham, Lovington, for defendants in error.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion heretofore filed is withdrawn and the following substituted therefor.

CHAVEZ, Justice.

This cause is before us pursuant to writ of error issued by this court directed to

the Hon. Robert W. Reidy, judge of the district court of the second judicial district for Bernalillo County, New Mexico. Plaintiff-in-Error, Rocky Mountain Life Insurance Company, a New Mexico corporation, petitioned this court for its writ of error as a result of the order of the district court filed February 12, 1962, directing the superintendent of insurance of New Mexico to pay over and deliver the sum of $10,000 from the assets of Rocky Mountain Life Insurance Company to Merrill L. Norton, attorney at law, as and for attorney's fees and expenses for defendants-in-error, in connection with conservation proceedings instituted against Rocky Mountain Life Insurance Company by R. F. Apodaca, superintendent of insurance of New Mexico, in the district court of Bernalillo County.

Since the issuance of the writ of error, Rocky Mountain Life Insurance Company has merged into and been absorbed by National American Life Insurance Company, a Louisiana corporation, and an appropriate substitution of parties has been effected. As the circumstances out of which this cause arose preceded the merger, and in the interest of clarity, plaintiff-in-error will be hereinafter referred to as "Rocky Mountain," R. F. Apodaca, superintendent of insurance of New Mexico, will be referred to as the "Superintendent," and defendants-in-error will be referred to as the "Baxter Group."

The proceedings in the court below originated on June 28, 1961, with the filing of the Superintendent's petition in the district court for an order of rehabilitation, reorganization and conservation against Rocky Mountain and five of its named officers and directors, pursuant to §§ 58–6–1 to 58–6–14, N.M.S.A., 1953 Comp. Incorporated by reference in the Superintendent's petition and attached thereto is a petition to the Superintendent, signed and verified by Jesse E. Baxter, on behalf of himself (present secretary-treasurer of Rocky Mountain), H. Lawson Montieth, N. Roy Kramer, Wade B. Campbell and Nathan B. Lamb. These are the parties referred to as the "Baxter Group."

The Baxter Group's petition alleged that the five-named officers and directors of Rocky Mountain had breached their fiduciary obligations to Rocky Mountain and to its stockholders, and had converted its assets to their own use. The Baxter Group requested the Superintendent to obtain from the Bernalillo County district court a temporary order restraining the five-named officers and directors from further acting as alleged, requiring them to submit and deliver to the Superintendent, in trust, all of their shares of Rocky Mountain stock, any proceeds thereof, and any Rocky Mountain assets in their possession, and to remove the five-named individuals from their positions as officers and directors of Rocky Mountain; also to institute pro-

ceedings in the district court for the receivership, rehabilitation, reorganization and conservation of Rocky Mountain. This petition also asks the Superintendent to request of the attorney general an appointment of a special assistant to aid in said investigation.

On the same day that the Superintendent's petition was filed, June 28, 1961, the district court issued its "Order of Conservation," finding that the allegations contained in the Superintendent's petition and the exhibit attached thereto, present just cause for immediate relief; that irreparable harm will result if the injunctive relief is not afforded; and that the Superintendent is the properly authorized officer to act as set forth in the Superintendent's petition. The district court's order also authorized the Superintendent to employ and appoint special deputy superintendents, counsel, clerks and assistants, as he deems necessary, and ordered that all expenses in connection therewith in conducting the proceedings be paid out of the assets of Rocky Mountain, subject to the court's approval, and specifically approved the appointment of Patricio S. Sanchez and Leland S. Sedberry, Jr., as attorneys for the Superintendent.

The district court, by its order, directed the Superintendent to take possession of the assets, properties, books and records of Rocky Mountain, and to administer the same in accordance with the court's orders. The district court also ordered that title to all of the property, contracts, rights of action, and all of the books and records of Rocky Mountain, vest in the Superintendent as conservator and the Superintendent was directed to take such steps toward the removal of the causes and conditions in the nature of rehabilitation, reorganization and conservation, which made the proceedings necessary. The district court further ordered and commanded the five-named officers and directors to deliver to the Superintendent all books and records relating to the affairs of Rocky Mountain.

On July 3, 1961, Rocky Mountain moved to quash the district court's "Order of Conservation" and also filed its verified response to the Superintendent's petition, denying all allegations of wrongdoing on the part of the five-named officers and directors.

Thereafter, on September 5, 1961, the Baxter Group filed directly with the district court in the conservancy proceeding a "Petition for an Order to Bring Suit and for Payment of Expenses and Attorney's Fee." This petition asks the court for an order to be directed to the Superintendent to bring suit against any and all persons responsible for the damages and losses suffered by Rocky Mountain during the period from September 12, 1958, to June 28, 1961, and in addition the Baxter Group's petition asks the court for reimbursement of expenses and attorney's fees for matters related to the exposure and follow-up of the

matters necessitating the receivership. They alleged further that the Baxter Group had initiated the proceedings by their petition to the Superintendent, and notwithstanding the actions taken by the Superintendent as conservator, that he had done little, if anything, to rehabilitate Rocky Mountain; that the Superintendent is the only party having standing to bring such suit; that the Superintendent had accumulated great multitudes of evidence to be used in the prosecution of a suit to recover the damages and losses suffered by Rocky Mountain; that the Baxter Group had incurred certain expenses and attorney's fees in the initial investigation and pursuit of the matters set forth in the petition in the amount of $5,825.63 owing to Merrill L. Norton, attorney; and that the Baxter Group should be reimbursed by Rocky Mountain for the reason that they were incurred in the interest and benefit of Rocky Mountain.

On September 18, 1961, the Superintendent filed a report and petition informing the court as to the circumstances and evidence attending his receivership; asking the court for an order authorizing him to enter into and execute a stipulated plan of operation for Rocky Mountain; to return to the company its assets, property, books, records, contracts and rights of action; and to approve payment of attorney's fees for Patricio S. Sanchez, Leland S. Sedberry, Jr. and Burns and Ferris, in the amount of $16,080.79 from Rocky Mountain's assets. This petition also requested dissolution of the district court's in personam order of June 28, 1961, directed to Rocky Mountain and the five-named officers and directors.

On the same day, September 18, 1961, the district court entered its order approving the Superintendent's report, ordered the payment of the special expenses of the conservator, including attorney's fees, and implemented the same.

Thereafter, on October 27, 1961, Rocky Mountain and the Superintendent filed their respective responses to the Baxter Group's petition for an order to bring suit and for payment of expenses and attorney's fees. On the question of attorney's fees and expenses, both of the responses alleged that the petition failed to state a claim upon which relief could be granted; that the Baxter Group's members were not and could not be proper parties in the cause; that the district court was accordingly without power to grant to them the relief requested; that attorney Merrill L. Norton had not represented either Rocky Mountain or the Superintendent; that Norton had no agreement with either for the payment of his fees and expenses; that no statute requires, authorizes or permits the allowance of attorney's fees to the Baxter Group's attorney; and that the Baxter Group's activities resulted in detriment, not benefit to Rocky Mountain. The Superintendent's response denied that he relied solely upon

the Baxter Group's petition in bringing this action, and specifically denied that the activities of said group were in any way a contributing cause.

Plaintiff-in-error raises eleven points upon which it relies for reversal. We consider point V, which is addressed to plaintiff's-in-error point 11, as it is determinative of this appeal. This point is that an appeal having been allowed to the Baxter Group from the district court's order denying their petition for an order to bring suit and for payment of attorney's fees, and more than thirty days having elapsed after the Baxter Group filed the motion for rehearing on said petition before the district court ruled on said motion, the district court lacked jurisdiction to subsequently order payment of attorney's fees and expenses.

The Baxter Group's petition for an order to bring suit and for payment of attorney's fees was filed on September 5, 1961. By letter from the district court dated October 25, 1961, the Baxter Group was advised that their petition had been denied. On November 1, 1961, the Baxter Group filed a petition for rehearing and on November 3, 1961, the district court filed its order denying the petition. On November 21, 1961, the district court entered its order setting the motion for rehearing on December 12, 1961. On November 27, 1961, the district court, in its discretion, issued a "Stay of Proceeding." This order decreed that the dis-

trict court's order of November 3, 1961, "be and the same hereby is stayed and restrained from effect until the rehearing of said petition." On December 4, 1961, the Baxter Group filed a motion for allowance of appeal to the supreme court from the order of November 3, 1961. The appeal was allowed by the district court on the same day, December 4, 1961. On December 15, 1961, an "Opinion and Order of the Court" was filed which, among other things, stated that the Baxter Group's attorney was entitled to attorney's fees. On February 7, 1962, the Baxter Group filed a second petition for order to pay expenses and attorney's fees and on February 12, 1962, the district court issued its "Order to Receiver for Payment of Attorney's Fee."

 Section 21-9-1, N.M.S.A., 1953 Comp., provides that if the court fails to rule on a motion directed against a judgment of the court within thirty days after the filing of the motion, such failure to rule shall be deemed a denial thereof. The Baxter Group would have us construe the district court's setting of a date for hearing on the motion for rehearing as a ruling on the motion. The two orders of the district court merely set dates upon which arguments on the motion were to be heard. They did not dispose of the motion. To comply with the requirements of § 21-9-1, supra, the trial court must rule upon and dispose of the motion within the statutory

thirty-day period. A ruling on the motion must be had. Therefore, in accordance with said section, the district court had lost jurisdiction to deal further with the motion for rehearing, as it had been denied by operation of law. Garcia v. Anderson, 41 N.M. 517, 71 P.2d 686. Therefore, the trial court's "Opinion and Order of the Court" of December 15, 1961, was void.

On November 27, 1961, the district court issued a "Stay of Proceeding" decreeing that the order of November 3, 1961, is "stayed and restrained from effect until the rehearing of said petition." The trial court also ordered and decreed that the time for filing an appeal from the November 3, 1961, order be tolled. Section 21–2–1(5) (1), N.M.S.A., 1961 Pocket Supp., establishes the permissible reasons for tolling the time within which to take an appeal. As none of the enumerated reasons set out in said section existed in this case, the trial court was without jurisdiction to toll the running of the time. This is not a matter within the discretion of the trial court but rather a matter in which adherence to the statute is required.

The order of December 4, 1961, allowing an appeal to this court, ordered it to be without prejudice to the rights of the Baxter Group arising out of its motion for rehearing. This would imply that the district court retained jurisdiction of the case after an appeal had been allowed. This is clearly not the law in New Mexico. Once an order allowing an appeal has been entered by a district court from a final judgment, the district court is divested of jurisdiction, except for the purposes specifically mentioned in State v. White, 71 N.M. 342, 378 P.2d 379.

From the foregoing, it is apparent that not only the order of December 15, 1961, was void, but the order of February 12, 1962, was also void since after granting the appeal on December 4, 1961, the court was without jurisdiction to enter the orders above mentioned.

In view of our disposition of this point, it is unnecessary to consider the other points raised by plaintiff-in-error.

The order of the district court allowing the Baxter Group's attorney's fees and expenses is reversed and the cause remanded to the district court with direction to vacate said order.

It is so ordered.

NOBLE and MOISE, JJ., concur.