734 P.2d 1266

**BANQUEST/FIRST NATIONAL BANK OF SANTA FE, a national banking corporation, Plaintiff-Appellee,**

**v.**

**LMT, INC., Ted C. Luna, and Fern Kimball Luna, et al., Defendants-Appellants.**

**No. 16475.**

Supreme Court of New Mexico.

March 18, 1987.

Rehearing Denied April 9, 1987.

Popejoy & Leach, Thomas L. Popejoy, Albuquerque, for defendants-appellants.

White, Koch, Kelly & McCarthy, John F. McCarthy, Larry White, Santa Fe, for plaintiff-appellee.

Johnson & Lanphere, Robin Dozier Otten, Albuquerque, for defendant-appellant Albuquerque Federal Sav. & Loan.

## OPINION

SCARBOROUGH, Chief Justice.

Banquest/First National Bank of Santa Fe (bank) brought suit against LMT, Inc., Ted C. Luna, and Fern Kimball Luna (Lunas) to recover judgment on a promissory note and personal guarantees and to foreclose a mortgage. Lunas answered and counterclaimed on grounds of fraud, fraud in the inducement, fraudulent and negligent misrepresentation, and other claims. The trial court granted the bank summary judgment on the note and personal guarantees, ordered foreclosure, and entered several other orders relating to costs and attorney's fees, but reserved ruling on the counterclaim. We reverse.

In 1979, Ted Luna, a Santa Fe architect, began work to build an eleven unit solar condominium project in Santa Fe. In seeking permanent financing for the project, Luna contacted several Santa Fe financial institutions. He also undertook to negotiate a construction contract with two Santa Fe contractors, neither of whom proved satisfactory. Luna contacted Gene Jones, a lending officer at the bank, and was referred to Larry Eastridge, a local contractor engaged in home construction. Luna asked Eastridge for credit references and was referred to the bank where Luna spoke to loan officer Charles Gerrell. Gerrell told Luna that Eastridge was financially stable and that the bank would finance the project.

On June 1, 1981, Lunas borrowed $400,-000 from the bank. Additional funds were advanced to Lunas in the sum of $140,000. The bank required Lunas to mortgage their personal residence to obtain the additional money. Much of this money was paid to Eastridge.

Eastridge eventually abandoned the project and declared bankruptcy. Negotiations between the bank and Lunas followed in an attempt to save the project. Lunas fell behind on payments. The bank filed suit on the note and personal guarantees, and to foreclose the mortgage. Lunas then renegotiated their loan with the bank, signing a new note for $687,000, and the bank dismissed the lawsuit.

In 1983, Lunas began to investigate the relationship between the bank and Eastridge. They learned that the bank had made loans to Eastridge; that the bank had recommended him for other projects; that he had built homes for bank officers; that he had declared bankruptcy before; and that his credit was questionable. This information was known to the bank but was

not disclosed by the bank to Lunas prior to their loan transactions. In fact, much of this information was not acquired by Lunas until January 1984, when they obtained the loan file from the bank.

Lunas again fell behind in payments. They initiated further negotiations with the bank. The negotiations proved fruitless and the bank again filed suit against the Lunas on the new note and mortgage. After Lunas answered and counterclaimed for fraud, fraud in the inducement, misrepresentation, and emotional distress, the bank moved for summary judgment.

The trial court granted the bank's motion for summary judgment on the note and mortgage, but reserved ruling on the counterclaim. This appeal followed. Lunas seek reversal of the partial summary judgment and decree of foreclosure, as well as reversal of several orders relating to costs and collection activity.

Lunas claim they were induced to borrow from the bank because the bank, through its officers, in effect sponsored Eastridge and misrepresented Eastridge's financial condition. Lunas advance this position as a defense to the suit on the note and as a part of their counterclaim against the bank. Lunas also complain about the trial court's entry of an order awarding attorney's fees to the bank for its work on the counterclaim as well as for work in the suit on the note. The bank argues that the trial court, by entering judgment on the note, found as a matter of law that there was no support for Luna's defense to the note. Yet the trial court reserved ruling on the same features of the Luna counterclaim. Lunas argue that there are material controverted facts which preclude the entry of summary judgment. The bank disagrees. Several other conflicting claims remain unresolved. We do not reach the merits of these contentions, but reverse on policy grounds.

It may have been proper for the trial court to grant partial summary judgment in this case, but our analysis suggests that the trial court's decision to do so may have a substantial impact on the Luna counterclaim which remains unresolved. It appears likely that there may be a need for future review of this case if we address the merits of this appeal. We may be required to consider the same issues a second time.

We are not unmindful of a counterclaim which might result in a substantial setoff against the bank's judgment. Questions remain concerning the trial court's award of attorney's fees for work on the counterclaim. What will happen if the trial court, on further consideration of the counterclaim, determines that it is meritorious?

We are not faced here with an appeal from a final order disposing of entirely separate claims. The claims and counterclaims asserted by the parties are intertwined in many respects. As a matter of policy, we wish to avoid "fragmentation in the adjudication of related legal or factual issues." *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 370 (3rd Cir.1975) (Gibbons, J., dissenting); *see also TPO Inc. v. FDIC*, 487 F.2d 131, 134 (3rd Cir.1973).

The proper resolution of these issues rests within the sound discretion of the trial court. In the absence of abuse, the decision of the trial court will not be disturbed. We feel, however, that the trial court abused its discretion in this case by finding that there was no just reason for delay of entry of judgment. *See* NMSA 1978, Civ.P.R. 1–054(C) (Recomp.1986). All the issues in this case should be resolved by the trial court before any judgment becomes final.

Moreover, as a matter of policy, this Court does not favor piecemeal appeals. *Cf. Allis-Chalmers Corp. v. Philadelphia Electric Co.* (referring to the undesirability of piecemeal appeals). We are not inclined to allow this case to be appealed on a piecemeal basis.

The decision of the trial court is reversed and this case is remanded for further proceedings consistent herewith.

IT IS SO ORDERED.

SOSA, Senior Justice, and WALTERS, J., concur.