824 P.2d 1033

**KELLY INN NO. 102, INC.,
Plaintiff–Appellant,**

**v.**

**Nick KAPNISON, Paul Kapnison, Personal Representative of the Estate of Natalyn Giannini, Deceased, and Robert O. Gathings, Defendants–Appellees.**

**KELLY INN NO. 102, INC., a corporation, and Howard T. Kelly, Plaintiffs–Appellees,**

**v.**

**Nick KAPNISON, et al., Defendants–Appellants.**

**Nos. 19021, 19443.**

Supreme Court of New Mexico.

Jan. 7, 1992.

Sylvain Segal Albuquerque, for Kelly Inn No. 102, Inc., and Howard Kelly.

Marchiondo, Vigil & Voegler, Douglas G. Voegler, Albuquerque, for Nick Kapnison, et al.

John A. Budagher Albuquerque, for First Natl. Bank in Albuquerque, Trustee of Robert and Nedra Gathings Trust.

William C. Salmon, Albuquerque, for defendant-appellee Anna Marie Kapnison Personal Representative of the Estate of Natalyn Giannini.

## OPINION

MONTGOMERY, Justice.

In this case we attempt to clarify the sometimes confusing state of the law surrounding the finality of judgments. The specific issue is whether a judgment declaring the rights and liabilities of the parties and awarding attorney's fees, but reserving for future determination the amount of the fees, is final, despite the parties and the court's recognition of the necessity for future proceedings to fix the amount of the award. We hold that it is.

This case also presents issues closely related to the finality issue: whether the trial court had jurisdiction to fix the amount of fees after more than thirty days had passed following entry of the initial judgment and after the losing party had appealed. We hold that it did.

The underlying controversy was a dispute between two lessors and their lessee over the validity of the lessors' termination of the lease because of the lessee's failure to comply with a covenant requiring construction of a motel on the leased premises.

The trial court ruled that the lessors had properly terminated the lease and entered judgment to that effect, ordering that attorney's fees would be awarded to the lessors after the amount had been established in a subsequent hearing. The lessee thereupon appealed. The court then held a hearing on the amount of attorney's fees and found that the amount claimed by the lessors was reasonable, but refused to enter a further judgment for that amount on the ground that it lacked jurisdiction to do so. The lessors then appealed from this order. We consolidated the two appeals and now affirm the judgment in favor of the lessors in the first appeal and reverse the order in favor of the lessee in the second appeal, remanding for further proceedings to fix the amount of attorney's fees.

### I.

On July 1, 1979, Nick Kapnison and Robert Gathings ("the lessors") signed a lease agreement with Howard Kelly ("the lessee")[1] covering a tract of land located near Interstate 40 west of Albuquerque, New Mexico. The lease was for a term of twenty-five years commencing April 1, 1980,[2] and granted the lessee three ten-year options to renew.

The lease agreement required the lessee to commence and complete construction of a motel on the leased premises "with due diligence," though it did not specify a date for commencement of such construction. The agreement also authorized the lessors to reenter and repossess the premises if the lessee defaulted in performance of any condition or covenant in the lease and if such default continued for thirty days after written notice from lessors. The agreement provided that if either party was compelled to file suit to enforce the terms of the lease, the prevailing party would be entitled to recover all expenses, court costs,

---

1. Through various assignments, etc., the other defendants-appellees have acquired interests in Kapnison and Gathings's position as lessors. All of these parties are referred to herein as "the lessors." Kelly transferred his interest in the leasehold to his corporation, Kelly Inn No. 2, Inc., which was formed after the lease was signed; the corporation and Kelly are referred to as "the lessee."

2. Later amended to October 1, 1980.

and reasonable attorney's fees incurred in the litigation.

As of September 16, 1986, the lessee had not commenced construction of the promised motel. On that date the lessors sent the lessee a written notice, declaring a default due to noncompliance with the provision requiring commencement and completion of a motel with due diligence. The lessee was given thirty days to cure the default.

The lessee failed to commence construction within this thirty-day period, and on November 12, 1986, the lessors filed an affidavit of default, declaring that the lessee's leasehold interest was terminated. The lessee thereupon sued the lessors for reinstatement of the lease and damages for breach of contract.[3] Lessors responded with a counterclaim requesting ejectment and damages.

After a bench trial, the district court entered findings of fact and conclusions of law, declaring that the lessee had not exercised due diligence and thus had breached the lease agreement by "failing to take any substantive steps to commence construction between January 1, 1983, and September 16, 1986, when interest rates were generally at the same level or lower than when the lease was originally signed[.]" The court accordingly entered a judgment on January 8, 1990, ejecting the lessee from the premises and declaring that the lessors had lawfully terminated the lease. The judgment further provided that, upon application to the court and after a hearing, the lessors would "recover reasonable attorney's fees and costs against [the lessee]."

The lessee filed a notice of appeal on February 6, 1990. On March 6, the lessors filed applications for attorney's fees and costs.[4] The court held a hearing on August 8, 1990, and entered an order on August 28, finding the requested fees and costs reasonable but denying the applications on the ground that it lacked jurisdiction to grant them. The lessors then appealed, and we consolidated the appeals.

The lessee's appeal[5] from the January 1990 judgment challenges the judgment primarily by asserting that the findings of fact on which it rests are not supported by substantial evidence. Although the lessors have not sought dismissal of this appeal in their response to the lessee's challenge, they do raise the issue of nonfinality of the judgment in their own appeal,[6] contending that, since the judgment was not final and appealable, the trial court retained jurisdiction and its August order refusing to fix the amount of attorney's fees for lack of jurisdiction was therefore in error. Since the lessors' appeal thus raises an issue of our jurisdiction to consider the lessee's appeal,[7] and since the issue of finality of the January judgment and the related issues of the trial court's continuing jurisdiction thereafter to fix the amount of attorney's fees are the more significant issues on this appeal, we take up first the questions raised by the lessors' appeal.

## II.

In *Sacramento Valley Irrigation Co. v. Lee,* 15 N.M. 567, 571, 113 P. 834, 835 (1910), this Court, sitting as the Supreme Court of the Territory of New Mexico, said, "A determination of what is a final judgment or decree is often a close question." Relying on federal cases beginning with *Forgay v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848), this Court continued:

It appears, therefore, that there are two distinct lines of cases upon the question of what constitutes a final decree. The United States cases ... hold that no judgment or decree will be regarded as final within the meaning of the statutes

3. The complaint was filed on January 20, 1987. Prior to trial, the lessee abandoned the claim for reinstatement and sought only damages.

4. The total of fees and costs requested by all lessors was $34,905.98. The court found this amount to be reasonable, and no issue as to reasonableness of the figure is presented on this appeal.

5. Cause No. 19,021 in this Court.

6. Cause No. 19,443 in this Court.

7. *See, e.g., In re Quintana,* 82 N.M. 698, 487 P.2d 126 (1971) (appellate court has no jurisdiction to review judgment which is not final).

in reference to appeals unless all issues of law and fact necessary to be determined were determined and the case completely disposed of so far as the court had power to dispose of it.

This rule, however, has been qualified to the extent that the retention of the case by the court after decree for the purpose of distribution of funds, etc., even though other and incidental decrees relating to the subject matter of the original decree and involving some of the same issues may be necessary in order to finally dispose of the case, will not destroy its character as a final decree from which an appeal may be taken.

*Sacramento Valley,* 15 N.M. at 573, 113 P. at 836 (citations omitted).

The rule in *Forgay v. Conrad*—that a judgment or decree adjudicating the basic rights and liabilities in controversy is to be given a practical, not technical, construction and treated as final even though other, more or less ministerial actions remain to be taken by the rendering court—retains considerable vitality today. *See generally* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.11 (2d ed. 1990) [hereinafter *Moore's*] (commenting, however, that the rule "is not always a rule of easy application[,]" *id.* at 97). One of its most recent applications (although the case was not cited in the opinion) is *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), in which the United States Supreme Court held that a judgment determining an employer's liability for employment compensation was final and appealable, even though the recoverability and amount of attorney's fees for the litigation (under a state statute providing for such fees in the kind of litigation involved) remained to be determined. Although there are certain differences between the present case and the litigation in *Budinich,* the issue before us can to some extent be characterized as whether to adopt the federal rule that a judgment on the merits is final and appealable, notwithstanding the necessity of further proceedings to determine the amount of any attorney's fees to be awarded.[8]

Other state courts considering this issue have ruled consistently with *Budinich.* Three state supreme courts—those of Connecticut, Colorado, and Kansas—have addressed the issue since *Budinich* was decided, and all three have relied on the Supreme Court's decision to hold that a judgment on the merits is final even though the recoverability or amount of attorney's fees is undetermined. *Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072 (Colo.1988) (en banc); *Paranteau v. DeVita,* 208 Conn. 515, 544 A.2d 634 (1988); *Snodgrass v. State Farm Mut. Auto. Ins. Co.,* 246 Kan. 371, 789 P.2d 211 (1990). In each of these cases, the court agreed with the Supreme Court that, since the finality of a judgment and its resulting appealability when entered have jurisdictional consequences, a bright-line rule regarding the finality of a decision on the merits, regardless of the pendency of a request for attorney's fees, is preferable to a case-by-case approach focusing on the nature of the attorney's fee provision in the applicable statute. *See Budinich,* 486 U.S. at 202, 108 S.Ct. at 1721. A fourth state court has also relied on *Budinich* to hold that a judgment resolving the merits of an action under 42 U.S.C. Section 1983 is final, even though it does not resolve a claim for attorney's fees under 42 U.S.C. Section 1988. *American Civil Liberties Union Inc. v. Thompson,* 155 Wis.2d 442, 455 N.W.2d 268 (Ct.App. 1990). Without relying on *Budinich,* other state courts have ruled that the finality of a judgment disposing of the merits of a claim is not destroyed by an outstanding request for attorney's fees. *See, e.g., City of Huntsville v. Certain,* 453 So.2d 715 (Ala.1984) (judgment under 42 U.S.C. § 1983; motion for attorney's fees under

---

**8.** One difference between this case and *Budinich* is that here the January 1990 judgment expressly awarded attorney's fees and left only their amount for future determination, whereas in *Budinich* neither the recoverability nor the amount was established by the initial judgment.

Although, as indicated later in this opinion, we are inclined to doubt that this distinction makes any difference, we do not expressly hold that, when the judgment makes no ruling on the recoverability of attorney's fees, it is nevertheless final.

42 U.S.C. § 1988), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3499, 87 L.Ed.2d 631 (1985); *Larche v. Car Wholesalers, Inc.,* 80 Md. App. 322, 562 A.2d 1305 (1989) (judgment and attorney's fee claim under 15 U.S.C. § 2310(d) (Magnuson–Moss Warranty— Federal Trade Commission Improvement Act)). The question is whether New Mexico should adopt a different rule.

The general rule in New Mexico for determining the finality of a judgment is that "an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible." *B.L. Goldberg & Assocs. v. Uptown, Inc.,* 103 N.M. 277, 278, 705 P.2d 683, 684 (1985). This general proposition has been repeated in countless New Mexico cases. *See, e.g., Hall v. Lea County Elec. Coop.,* 76 N.M. 229, 233, 414 P.2d 211, 213–14 (1966) (quoting *Floyd v. Towndrow,* 48 N.M. 444, 446, 152 P.2d 391, 392 (1944) (quote originating in 1 A.C. Freeman, *Law of Judgments* § 45 (5th ed. 1925)); *Cole v. McNeill,* 102 N.M. 146, 147, 692 P.2d 532, 533 (Ct.App.1984); *Clancy v. Gooding,* 98 N.M. 252, 254, 647 P.2d 885, 887 (Ct.App. 1982); *Johnson v. C & H Constr. Co.,* 78 N.M. 423, 425, 432 P.2d 267, 269 (Ct.App. 1967). It will be observed that this general statement is essentially the same as that set out in *Sacramento Valley, supra,* and undoubtedly the statement originated in *Forgay v. Conrad* or one of its progeny.[9]

Like most general statements, however, this one, perhaps because of its frequent repetition, is often pronounced as if it were an absolute, inflexible rule, like the law of gravity, instead of a general proposition admitting of various exceptions. That the rule has exceptions or qualifications, however, was explicitly recognized by this Court in its early statement in *Sacramento Valley:* The retention of jurisdiction for the purpose of distributing funds, etc., does not destroy the judgment's finality for purposes of permitting an appeal to be taken. Other exceptions or qualifications have

been recognized in the numerous and widely varying circumstances in which the *Forgay–Conrad* rule has been applied in the federal courts. *See* 9 *Moore's* ¶ 110.11, at 91–105. And, despite the appearance of inflexibility in the foregoing statement of the general rule, our case law makes it clear that the term "finality" is to be given a practical, rather than a technical, construction. *Central–Southwest Dairy Coop. v. American Bank of Commerce,* 78 N.M. 464, 466–67, 432 P.2d 820, 822–23 (1967) (quoting from *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964) ("[I]t is impossible to devise a formula to resolve all marginal cases coming within what might well be called the 'twilight zone' of finality."); *Clancy,* 98 N.M. at 254–55, 647 P.2d at 887–88; *Bralley v. City of Albuquerque,* 102 N.M. 715, 718, 699 P.2d 646, 649 (Ct.App.1985). As we have said in another context, to determine whether a judgment is final, the court must look to its substance and not its form. *Rio Arriba County Bd. of Educ. v. Martinez,* 74 N.M. 674, 678, 397 P.2d 471, 474 (1964).

Our statutes, rules, and cases illustrate numerous situations in which an order does, as contemplated by *Foster v. Addington,* 48 N.M. 212, 213, 148 P.2d 373, 374 (1944), "practically dispose of the merits of the action" even though further proceedings remain necessary "to carry the order into effect." In *Sacramento Valley,* a decree granting an injunction and appointing a receiver for a corporation was held final so as to be appealable, although further proceedings regarding the disposition and distribution of the assets of the corporation were necessary. 15 N.M. at 577–78, 113 P. at 838. In *Cantrell v. Curnutt,* 80 N.M. 519, 458 P.2d 594 (1969), the initial judgment declared that a partnership owed a certain sum to one of the partners, adjudicating all claims of indebtedness between the partners inter se and between the partners and the partnership. That judgment

---

9. See, for example, *Thomson v. Dean,* 74 U.S. (7 Wall.) 342, 345, 19 L.Ed. 94 (1868) (stating that "this court has always desired that appeals be taken only from decrees which are not only

final but complete" and referring to the expediency of "refraining from making final decrees on any part of a cause, however important, until prepared to dispose of it completely.").

was held final, although further proceedings were necessary to determine the status of certain assets of the partnership, direct their sale, and apply the proceeds: "We are satisfied that the court in determining that the liquor license was an asset of the partnership functioned under its retained jurisdiction for the purpose of a final accounting and dissolution of the partnership." *Id.* at 521, 458 P.2d at 596. *See also State v. Quesenberry*, 72 N.M. 291, 293–94, 383 P.2d 255, 257 (1963) (judgment in condemnation action awarding compensation to landowners and vesting title to real estate in state was final judgment; mandamus to enforce it was ancillary to and in aid of the judgment and served the same purpose as a writ of execution).

Similarly, in mortgage foreclosure cases, this Court has often recognized that a decree adjudicating the mortgagor's indebtedness is final and appealable, notwithstanding the necessity for further proceedings to enforce the judgment and supervise the sale of the mortgaged property. *Speckner v. Riebold*, 86 N.M. 275, 523 P.2d 10 (1974), holds that there are two separate adjudications in a suit to foreclose a mortgage: the initial judgment declaring the rights of the parties in the mortgaged premises and the decree that the mortgaged property be sold. The initial judgment is final and appealable for thirty days after its entry. The second part of the judgment is interlocutory and becomes final only when the judicial sale is confirmed. 86 N.M. at 277, 523 P.2d at 12. *See also Plaza Nat'l Bank v. Valdez*, 106 N.M. 464, 745 P.2d 372 (1987) (initial decree of foreclosure did not deprive court of jurisdiction to entertain motion for extension of redemption period because motion was filed within thirty days after second decree confirming foreclosure sale); *Waisner v. Jones*, 103 N.M. 749, 713 P.2d 565 (Ct.App.1986) (order confirming foreclosure sale is final appealable order if rights of parties to sale proceeds are determined), *rev'd on other grounds after remand*, 107 N.M. 260, 755 P.2d 598 (1988). Relying on *Speckner*, we have very recently held that the court adjudicating the action on the debt has continuing jurisdiction over the foreclosure sale and that the exer-

cise of a right of redemption is merely a continuation of the process of enforcing the mortgage and the rights and liabilities flowing from it. *Crown Life Ins. Co. v. Candlewood, Ltd.*, 112 N.M. 633, 635, 818 P.2d 411, 413 (1991).

Our holding in *Crown Life* was nothing new; sixty years ago we held that a motion to enter a deficiency judgment after a judicial sale of property ordered sold by the original decree of foreclosure

> was merely a step in proper subsequent proceedings to enforce the judgment already rendered. The personal indebtedness of the defendants had already been adjudged. The amount for which execution should issue was alone left to be determined, and that by mere computation. We cannot see how the motion for entry of deficiency judgment can be considered as a new judgment, or as a modification of the original "final decree," any more than a motion to confirm the master's report of sale should be so considered. An order of confirmation is a "final order affecting a substantial right made after the entry of a final judgment." So, also, an order in proceedings supplementary to execution. So we must classify an order determining, after foreclosure sale, the amount of deficiency to be entered as a personal judgment.

*Armijo v. Pettit*, 34 N.M. 559, 561, 286 P. 827, 828 (1930) (citations omitted) (citing *Cooper v. Brownfield*, 33 N.M. 464, 468, 269 P. 329, 330 (1928)). *See also Leonard Farms v. Carlsbad Riverside Terrace Apartments, Inc.*, 86 N.M. 241, 522 P.2d 576 (1974) (court had jurisdiction long after initial decree of foreclosure to determine by way of accounting amount owed junior mortgagee and to impress equitable lien therefor on other property of redemptioner-mortgagor):

■ Yet another example, closely analogous to the present case, of a judgment that is treated as final even though further proceedings are necessary to implement it is a case in which costs remain to be assessed in favor of the prevailing party. The pendency of proceedings to fix the amount of costs does not render the judg-

ment nonfinal. *Schleft v. Board of Educ.,* 107 N.M. 56, 57, 752 P.2d 248, 249 (Ct.App. 1988) (relying on *Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 428 P.2d 640 (1967)).

To distill from all of this a general principle that will provide an easy answer to the question of when a judgment is final and when it is not is probably a hopeless undertaking. We agree with the United States Supreme Court that it is impossible to devise a formula to resolve all marginal cases coming within the twilight zone of finality. One formula, not yet mentioned in this opinion, has been phrased by our court of appeals as follows: "The test of whether a judgment is final so as to permit the taking of an immediate appeal, lies in the effect the judgment has upon the rights of some or all of the parties." *Bralley,* 102 N.M. at 718, 699 P.2d at 649. But this, of course, fails to explain what kind of effect upon the rights of the parties is necessary for an order to be considered as final.

■ We probably can do little better than to propose the following guidelines, which may answer some but undoubtedly will not answer all of the difficult questions falling into the twilight zone: Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein. *See Budinich,* 486 U.S. at 199, 108 S.Ct. at 1720. Where a postjudgment request, such as one for attorney's fees, raises issues "collateral to" and "separate from" the decision on the merits, such a request will not destroy the finality of the decision, *see id.* at 199–200, 108 S.Ct. at 1720; proceedings to carry out or give effect to the judgment do not render the judgment nonfinal, because the trial court always retains jurisdiction to enforce its unsuperseded judgment, *see Prudential Ins. Co. of America v. Anaya,* 78 N.M. at 107, 428 P.2d at 646; *Armijo v. Pettit,* 34 N.M. at 561, 286 P. at 828.

■ What we have said is to some extent inconsistent with certain, for the most part alternative, holdings in two court of appeals cases. In *Johnson v. C & H Construction Co.,* 78 N.M. 423, 432 P.2d 267 (Ct.App.1967), the court dismissed for lack of jurisdiction an appeal in a worker's compensation case. The court held that the judgment in the case was not final because it did not dispose of issues of disability and attorney's fees. Similarly, in *Watson v. Blakely,* 106 N.M. 687, 748 P.2d 984 (Ct. App.1987), the court ruled that the judgment appealed from was not final, in part because it omitted any provision disposing of the petitioner's claim for attorney's fees. The petitioner had filed an action seeking domestication of a divorce decree entered in the Dominican Republic and various other forms of relief including attorney's fees. The trial court entered a judgment awarding several items of relief, but, in addition to failing to rule on the attorney's fee request, did not rule on whether the divorce decree would be domesticated and whether any relief by way of an accounting would be granted to the respondent, who sought such relief in his counterclaim.

It is apparent that in both *Johnson* and *Watson* there were alternative bases for the holding that the judgment appealed from was not final. Nevertheless, in *Watson* the court said specifically: "[W]here an award of attorney's fees is authorized by statute or rule, and a request is made for such award, a judgment which does not dispose of the issue of attorney's fees is not a final order." 106 N.M. at 691, 748 P.2d at 988. The court cited *Johnson* as support for this statement. Subsequently, in *Schleft v. Board of Education, supra,* in holding that the pendency of further proceedings to fix the amount of costs did not render a judgment nonfinal, the court distinguished *Johnson,* saying: "[T]he award of attorney fees in worker's compensation cases differs significantly from the award of costs in other cases. ... The award of attorney fees was integral to the compensation claims presented in the *Johnson* complaint." 107 N.M. at 57, 752 P.2d at 249.

The lessors in the present case make a similar argument, founded on the provisions in the lease agreement entitling the prevailing party in litigation over the lease to recover that party's attorney's fees and costs in such litigation. They argue: "By virtue of the lease agreement, attorneys' fees and costs ... are an additional element of damages to which [the lessors] are entitled." Regardless of whether this is a correct characterization of the attorney's fee provision in the lease, we think that the question of finality of a judgment adjudicating the rights and liabilities of the parties to a lease, or any other contract, should not turn on whether attorney's fees and costs are characterized as an additional element of damages, rather than as supplementary relief awarded to the prevailing party. Likewise, the finality of a judgment should not turn on whether the governing statute or court rule authorizes attorney's fees as part of the relief to be afforded to a successful plaintiff, rather than, for example, as an amount to be taxed as "costs" in favor of the prevailing party.[10] In this respect we agree with the Supreme Court in *Budinich* that the

> effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those fees by the statute or decisional law [or, we would add, the contract] that authorizes them.
>
> We have said elsewhere that "[t]he considerations that determine finality are not abstractions but have reference to very real interests—not merely those of the immediate parties, but, more particularly, those that pertain to the smooth functioning of our judicial system." ... This practical approach to the matter suggests that what is of importance here is not preservation of conceptual consistency in the status of a particular fee authorization as "merits" or "nonmerits," but rather preservation of operational consistency and predictability in the overall application of [28 U.S.C.]

§ 1291. This requires, we think, a uniform rule that an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final.

486 U.S. at 201–02, 108 S.Ct. at 1721–22 (quoting *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 69, 68 S.Ct. 972, 977, 92 L.Ed. 1212 (1948)).

Accordingly, to the extent that *Johnson* and *Watson* are inconsistent with the views we have expressed above, we find it necessary to overrule those cases, insofar as they hold that an authorization for attorney's fees, whether or not it is conceptualized as part of the relief afforded by the statute or other governing rule or contract, and whether or not it is requested in the plaintiff's complaint or the defendant's answer, if not granted and fixed in the judgment renders the judgment nonfinal and unappealable.

In reaching our decision on the finality of the January 1990 judgment in this case, we have not overlooked the strong policy in New Mexico disfavoring piecemeal appeals. That policy has been endorsed in numerous opinions of this Court and of the court of appeals. *See, e.g., Banquest/First Nat'l Bank v. LMT, Inc.*, 105 N.M. 583, 585, 734 P.2d 1266, 1268 (1987); *C.C. Davis v. Meadors–Cherry Co.*, 63 N.M. 285, 289, 317 P.2d 901, 904 (1957) (per curiam); *Foster v. Addington, supra*, 48 N.M. at 213, 148 P.2d at 374; *Cole v. McNeill, supra*, 102 N.M. at 148, 692 P.2d at 534. This concern, however, has been addressed in several of the cases cited earlier in this opinion that follow *Budinich* and hold that an unresolved attorney's fee issue does not destroy the finality of an otherwise final judgment. In *Snodgrass v. State Farm Mutual Automobile Insurance Co.*, for example, the Supreme Court of Kansas commented:

> We are aware that the rule we have adopted may lead to an occasional "piecemeal" appeal of a judgment on the merits and an award of attorneys fees. The

---

**10.** *See, e.g., Home Plumbing & Contracting Co. v. Pruitt*, 70 N.M. 182, 186–87, 372 P.2d 378, 381 (1962) (under mechanic's lien statute, NMSA 1953, Section 61–2–13 (now NMSA 1978, Section 48–2–14 (Repl.Pamp.1987), allowance for attorney's fees to successful lien claimant should be treated as costs).

**240**

problem of the "piecemeal" appeal may be avoided if trial judges delay entering judgment on the merits until the fee question is resolved and dispose of both the merits and the attorney fees in a single judgment. The better practice will be to resolve all fee questions in a timely fashion. This will allow an appeal to proceed more expeditiously.

246 Kan. at 377–78, 789 P.2d at 215. In *Paranteau v. DeVita,* the Supreme Court of Connecticut said essentially the same thing and added:

If for some reason the question of attorney's fees must be decided *after* the entry of judgment on the merits, we suggest that the trial court insist upon the prompt filing and disposition of fee requests so that any pending appeal on the merits of the action may be amended to include any prospective appeal from a supplemental postjudgment award of attorney's fees.

208 Conn. at 524, 544 A.2d at 639 (emphasis in original). In other words, the trial courts can be of significant help to the appellate courts in promoting the policy against piecemeal appeals.

Like the Kansas and Connecticut courts, we acknowledge that the rule we have adopted may, at times, disserve this policy. That consequence, however, does not strike us as a sufficient reason to hold that the pendency of an attorney's fee request destroys the finality of a judgment on the merits. For, while our decision may not always promote the policy against piecemeal appeals, which is rooted in a desire to maximize judicial economy, *see Banquest,* 105 N.M. at 585, 734 P.2d at 1268 (refusing to hear appeal under SCRA 1986, 1–054(C)(1), because court might have to consider the same issue again on a second appeal), it does promote the equally important policy of facilitating meaningful appellate review of cases in which the aggrieved party exercises the constitutional right to an appeal. *See* N.M. Const. art. VI, § 2 (aggrieved party has absolute right to one appeal); *Govich v. North American Syss.,* 112 N.M. 226, 814 P.2d 94, 98 (1991) (New Mexico has strong policy that courts should facilitate, rather than hinder, the right to

appeal). As Professor Moore says, commenting on *Gillespie v. United States Steel Corp., supra,* "In most instances ... *Gillespie* has been taken, along with *Forgay* and *Cohen [v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)], as authority for the principle that 'final' is a practical, rather than technical term, and its meaning is to be developed from case to case with the aim of achieving judicial efficiency without loss of meaningful review." 9 *Moore's* ¶ 110.12, at 109 (citations omitted).

This latter policy—promoting meaningful review—will most often be subserved, rather than subverted, by the rule we adopt today. For that matter, the policy of achieving judicial efficiency may also be promoted by enabling the parties to get on with their appeal, without wasting the time necessary to prepare for and conduct an attorney's fee hearing before even beginning the steps necessary to perfect the appeal. Those steps—filing the notice of appeal and the docketing statement, preparing the record proper, designating and preparing the transcript of proceedings, etc.—can all be initiated and perhaps completed while the parties prepare for and the court conducts the attorney's fee hearing. If either party is dissatisfied with the result of that hearing, that party can then appeal from the court's decision; and, as happened in this case, the two appeals can then be consolidated. We see no loss in judicial efficiency from this procedure, and we see the potential for considerable gains in expeditiously processing the appeal on the merits, whether or not it is consolidated with another appeal from the ruling on attorney's fees.

For all of these reasons, we hold that the January 1990 judgment in this case was final and appealable when entered, and we overrule the lessors' contention that it was not.

### III.

Before proceeding to the merits of the lessee's appeal, we consider the lessors' further contention that the trial court erred

by refusing to fix the amount of attorney's fees on the ground that it had lost jurisdiction. On this issue we sustain the lessors' position and hold that the court retained jurisdiction to set the amount of attorney's fees, even though more than thirty days had passed from the entry of the basic judgment and even though the lessee had in the interim appealed from that judgment.

The court's order denying the lessors' applications for attorney's fees did not specify a reason for the conclusion that the court lacked jurisdiction to award them, although the order noted that the lessee had filed a notice of appeal on February 6, 1990. The lessee responds to the lessors' appeal from this order by relying both on the rule that the taking of an appeal divests the district court of jurisdiction and on the rule that a trial court retains jurisdiction over its judgment for thirty days after entry of the judgment and thereafter has no jurisdiction over the subject matter of the action.

### A.

The first rule has been stated many times in New Mexico, substantially as follows: "[T]he trial court loses jurisdiction of the case upon the filing of the notice of appeal, except for the purposes of perfecting such appeal, or of passing upon a motion directed to the judgment pending at the time." *Wagner Land & Inv. Co. v. Halderman*, 83 N.M. 628, 630, 495 P.2d 1075, 1077 (1972) (citing *Mirabal v. Robert E. McKee, General Contractor, Inc.*, 74 N.M. 455, 457, 394 P.2d 851, 852 (1964), and *National Am. Life Ins. Co. v. Baxter*, 73 N.M. 94, 100, 385 P.2d 956, 960 (1963)). *See also Corbin v. State Farm Ins. Co.*, 109 N.M. 589, 592, 788 P.2d 345, 348 (1990) ("The taking of appeal divests the district court of jurisdiction of the cause of action and transfers it the appellate court[,]" citing *State ex rel. Bell v. Hansen Lumber Co.*, 86 N.M. 312, 313, 523 P.2d 810, 811 (1974)); *State v. Clemons*, 83 N.M. 674, 675, 496 P.2d 167, 168 (Ct.App.1972) ("[T]he appeal 'completely divests the district court of jurisdiction' except as provided in *State*

*v. White* [71 N.M. 342, 347, 378 P.2d 379, 382 (1962)]. Divestiture occurs by the taking of an appeal because the appeal removes the litigation from the district court.") (citing numerous cases, including *Halderman, Mirabal,* and *Baxter*). Like the rule that a judgment is not final unless the case has been disposed of to the fullest extent possible, the rule that an appeal "completely divests" the trial court of jurisdiction over "the case" or "the litigation" has, through frequent repetition, taken on the character of an inflexible law of nature rather than a pragmatic guideline enabling trial courts to determine when to proceed further with some part of a case and when to refrain because issues already resolved are under consideration by an appellate court. The rule is frequently attributed to *State v. White*, which, however, involved the question whether a trial court could *modify its judgment* in the face of a pending appeal from the judgment.

It is clear, though, that a pending appeal does *not* divest the trial court of jurisdiction to take further action when the action *will not affect the judgment on appeal* and when, instead, the further action enables the trial court to carry out or enforce the judgment. A prime example is *Prudential Insurance Company of America v. Anaya, supra*, in which this Court held that the trial court had jurisdiction, after a notice of appeal was filed, to determine the amount of costs to be awarded the prevailing party. We distinguished *Baxter* and *White* and said, relying on *Samples v. Robinson*, 58 N.M. 701, 275 P.2d 185 (1954), that the proceeding to fix the amount of costs was a proceeding to carry out the trial court's judgment allowing costs—a judgment which had not been superseded and which the court had a duty to enforce under NMSA 1953, Section 21-9-5 (now NMSA 1978, Section 39-1-5 (Repl. Pamp.1991)). As we have noted above, a proceeding to fix the amount of attorney's fees is analogous to a proceeding to fix the amount of costs. It does not seek to alter or revise the judgment in any way or otherwise to affect the issues on appeal from the judgment; it seeks only to carry out the judgment by quantifying the supplementa-

ry relief to which the prevailing party—under the applicable statute, court rule, or contract—is entitled.

Another example appears in *Armijo v. Pettit, supra,* in which we held that a motion to enter a deficiency judgment could be entertained, notwithstanding the pendency of an appeal from a judgment adjudicating defendants' indebtedness, foreclosing a lien, and directing judicial sale of the property subject to the lien. We said:

> Appellant admits that, until superseded, this judgment could be enforced, *even after the taking of the appeal,* up to the point of entering deficiency judgment. She denies, however, that, after the appeal, and pending receipt of mandate from this court, the lower court has jurisdiction to enter a "new judgment" for the deficiency.
>
> The original "final decree" remained in full force and effect, *though appealed from,* and appellant was at liberty, at her peril, to proceed to enforce it.
>
> As we see it, appellant's motion did not ask for a new judgment, or for any modification of the judgment appealed from. It was merely a step in proper subsequent proceedings to enforce the judgment already rendered. ... We cannot see how the motion for entry of deficiency judgment can be considered as a new judgment, or as a modification of the original "final decree," any more than a motion to confirm the master's report of sale should be so considered.

34 N.M. at 561, 286 P. at 828 (emphasis added; citations omitted).

A third example is a trial court's retention of jurisdiction to award supplemental relief under NMSA 1978, Section 44-6-9, to enforce a declaratory judgment. *See United Nuclear Corp. v. General Atomic Co.,* 98 N.M. 633, 644, 651 P.2d 1277, 1288 (1982) ("The supplemental proceedings here come within the rule permitting collateral proceedings necessary to give effect to a judgment pending appeal. Pending appeal, a trial court retains jurisdiction to enforce an unsuperseded judgment.").

A fourth example lies in the power of a district court to fix the amount of a supersedeas bond, approve an additional thirty-day extension beyond the initial sixty-day limitation within which appellant must file the bond, and rule on appellant's motion for a stay of execution of the judgment, all under NMSA 1978, Section 39-3-22 (Repl. Pamp.1991), and SCRA 1986, 1-062 (Supp. 1991). *See Devlin v. New Mexico State Police Dep't,* 108 N.M. 72, 74, 766 P.2d 916, 918 (1988).

Federal courts have held that the pendency of an appeal does not divest the trial court of jurisdiction to rule on a request for attorney's fees. *See, e.g., Masalosalo v. Stonewall Ins. Co.,* 718 F.2d 955, 956-57 (9th Cir.1983); *Terket v. Lund,* 623 F.2d 29, 33-34 (7th Cir.1980). In *Terket,* the court disagreed with a contrary ruling in *Wright v. Jackson,* 522 F.2d 955, 957-58 (4th Cir.1975), saying:

> In analyzing the result reached by the court in *Wright,* we note first that the general rule divesting the district court of "jurisdiction" upon the filing of a notice of appeal does not refer to the court's jurisdiction under any statute or mandatory rule. "It is a judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time. It should not be employed to defeat its purposes not [sic—or] to induce needless paper shuffling."
>
> ....
>
> ... It is true that in ruling on the issue of attorneys' fees a district court must take into account both the relative merit of the plaintiff's case and the result obtained. But this is not the sort of reconsideration of the merits which could lead to altering the substantive judgment or in any way interfere with the pending appeal. The district court merely takes the merits into account, along with many other factors, in making a discretionary decision entirely distinct from the underlying judgment. Thus the policy against two courts treating the same issue concurrently does not require withdrawing the district court's power to decide attor-

neys' fees motions while an appeal is pending.

623 F.2d at 33–34 (citations omitted) (quoting 9 *Moore's* § 203.11, at 3–45 n. 1 (2d ed. 1980)).

In *Garcia v. Burlington Northern Railroad Co.*, 818 F.2d 713 (10th Cir.1987), the Court of Appeals for the Tenth Circuit held that a district court lacked jurisdiction to award prejudgment interest after an appeal had been taken. The court noted the federal rule, which is essentially the same as the New Mexico rule noted above, that filing a timely notice of appeal transfers the matter from the district to the appellate court and divests the district court of jurisdiction. *Id.* at 721. The court continued:

In collateral matters not involved in the appeal, however, the district court retains jurisdiction.... [C]ourts have found certain matters to be collateral to a final judgment. For example, even after a timely notice of appeal is filed, a district court may retain jurisdiction to determine the propriety and amount of attorney's fees.

*Id.* (citations omitted).

■ It is possible to read one of our holdings in *Baxter* as inconsistent with the foregoing rationale. In that case two orders authorizing payment of attorney's fees in a proceeding for receivership of an insurance company were held void both because they were entered after a notice of appeal had been filed and because they were entered more than thirty days after the instigators of the receivership had filed a petition for a rehearing on their request for reimbursement of expenses. It appears from the opinion that at least some of the attorney's fees awarded by the two orders were incurred *before* the receivership action and thus related to the subject matter of the order under appeal. However, it is probable that at least parts of the two orders granted the instigators reimburse-

ment of attorney's fees incurred during, and as a result of, the receivership. Thus, *Baxter* can be read as saying that a trial court has no jurisdiction after entry of an underlying judgment to award attorney's fees incurred in procuring the judgment. To the extent *Baxter* can be so read, we now disapprove this holding and adopt instead the statements in, inter alia, *Garcia* that, in collateral matters not involved in the appeal, such as determining the propriety and amount of attorney's fees, the trial court retains jurisdiction.

### B.

Similarly, we do not follow *Baxter* to the extent it can be read to say that the passage of thirty days from entry of the underlying judgment deprives, under NMSA 1978, Section 39–1–1 (Repl.Pamp.1991), the trial court of jurisdiction to rule on requests for attorney's fees to the party who has prevailed in the judgment. Section 39–1–1, the pertinent provisions of which are quoted in the footnote,[11] provides that the trial court retains control over a final judgment for thirty days. "[O]nce the thirty-day period has passed, we have consistently held that the court loses jurisdiction over the subject matter." *Elwess v. Elwess*, 73 N.M. 400, 403, 389 P.2d 7, 8 (1964) (court lacked jurisdiction, after dismissing case pursuant to stipulation, to reopen it when more than thirty days had passed after order of dismissal). This rule has been applied most frequently in cases in which a postjudgment motion has been denied by operation of law because of the passage of thirty days from the filing of the motion; the appellate court has held that the trial court lacked jurisdiction thereafter to take some action on the merits of the case. *See, e.g., Halderman*, 83 N.M. at 630, 495 P.2d at 1078 (motion to permit filing of requested findings nunc pro tunc as of day before entry of judgment was denied by operation

11. "Final judgments and decrees, entered by district courts in all cases tried pursuant to the provisions of this section shall remain under the control of such courts for a period of thirty days after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which

may have been filed within such period, directed against such judgment; provided, that if the court shall fail to rule upon such motion within thirty days after the filing thereof, such failure to rule shall be deemed a denial thereof...." NMSA 1978, § 39–1–1 (Repl.Pamp.1991).

of law thirty days after filing; trial court was without jurisdiction thereafter to permit the filing of requested findings and conclusions); *Baxter,* 73 N.M. at 100, 385 P.2d at 960 (trial court had lost jurisdiction to deal with motion for rehearing because it had been denied by operation of law); *Chavez–Rey v. Miller,* 99 N.M. 377, 381, 658 P.2d 452, 456 (Ct.App.1982) (trial court's order granting remittitur, entered more than thirty days after filing of defendant's post-trial motion for new trial or remittitur, was denied by operation of law and court thereafter had no jurisdiction to order remittitur), *cert. denied,* 99 N.M. 358, 658 P.2d 433 (1983).

Once again, we have a statement of a general rule that goes a bit too far: "[O]nce the thirty-day period has passed, ... the court loses jurisdiction over the subject matter." *Elwess.* But it is clear from our cases that, although the court may lose jurisdiction over the subject matter of the dispute resolved by the underlying judgment, the passage of more than thirty days from entry of the judgment does not oust the court of jurisdiction to rule on matters "collateral to" or "separate from" the judgment. For example, in *Cantrell v. Curnutt, supra,* this Court held that Section 39–1–1 did not deprive the court of jurisdiction to determine the status of a liquor license, although considerably more than thirty days had passed since entry of the initial judgment adjudicating issues among the partners and the partnership: "We are satisfied that the court in determining that the liquor license was an asset of the partnership functioned under its retained jurisdiction for the purpose of a final accounting and dissolution of the partnership." 80 N.M. at 521, 458 P.2d at 596. Similarly, in *Plaza National Bank v. Valdez, supra,* a judgment of foreclosure of a mortgage did not cause the trial court to lose jurisdiction to entertain the mortgagor's motion, filed more than thirty days after entry of the judgment, for an extension of the redemption period. Under *Speckner v. Riebold, supra,* entry of the initial judgment did not, despite Section 39–1–1, prevent the court from entering a subsequent order dealing with the rights of

the parties in connection with the judicial sale of the property. *Valdez,* 106 N.M. at 465, 745 P.2d at 373.

█ And so we reach the same conclusion with respect to the trial court's loss of jurisdiction under Section 39–1–1 as we have reached concerning the same issue when a notice of appeal is filed after entry of a final judgment. The trial court retains the same jurisdiction to deal with matters collateral to or separate from the issues resolved in the judgment as it has following the filing of the notice of appeal. The necessity for further proceedings to carry the judgment into effect or otherwise to dispose of a matter that does not entail alteration or revision of decisions embodied in the judgment does not prevent finality of the judgment; and the court does not lose jurisdiction, after thirty days have passed or an appeal has been taken, to dispose of such matters. Determining the amount of an attorney's fee award is one such matter.

## IV.

We now consider the merits of the lessee's appeal, though the issues involved in that appeal may be disposed of in fairly short order. As noted earlier, the lessee's challenge to the January 1990 judgment is based on an attack on the trial court's findings of fact, which in turn is based on an argument that the findings are not supported by substantial evidence. The lessee first asserts that there was no substantial evidence to support the court's finding that the lessee had a reasonable time after signing the lease to commence construction and failed to exercise due diligence by not taking any substantive steps toward commencing construction between January 1, 1983, and September 16, 1986.

█ After reviewing the record, we determine that substantial evidence supported these findings. On September 16, 1986, when the lessors sent the lessee a notice of default, more than seven years had elapsed since execution of the lease. The lessee had obtained all of the preliminaries required to secure a loan commitment (zoning, appraisal, preliminary plans,

survey) by the end of 1981, yet at the time it received the notice of default it still had not obtained financing. Kelly testified that he was unable to obtain financing because of high interest rates, but the lessors adduced evidence showing that after July 1982 (and except for July 1984) the prime rate was lower than at the time the lease was signed. Moreover, the lease agreement authorized Kelly to refinance any high-interest loan if rates later went down. The lease did not—as it could have—make Kelly's obligation to construct a motel contingent upon securing financing at a given interest rate, so the court could readily have inferred that Kelly assumed the risk of obtaining a rate for construction financing that would ensure acceptable profitability from the leased premises. *See Tyrpak v. Lee,* 108 N.M. 153, 154, 768 P.2d 352, 353 (1989) (on appeal, we review the evidence in the light most favorable to support the trial court's findings and indulge all reasonable inferences in support of the court's decision).

The lessee also challenges the trial court's findings that the lessors' notice of default was sufficient and that the lessee failed to correct the default within thirty days after receipt of the notice. Here lessee argues that, assuming it breached the lease, lessors acquiesced in the breach for perhaps as long as three years and should have given lessee notice of their intention to enforce the terms of the lease before giving notice of default.

Lessee's argument involves the related concepts of waiver, modification, and estoppel, although it does not expressly identify these concepts in its brief. All three of these principles rely upon the same basic contention that lessors' conduct negated the express default provision in the lease. *See J.R. Hale Contracting Co. v. United New Mexico Bank,* 110 N.M. 712, 716, 799 P.2d 581, 585 (1990); *see also* 3A A.L. Corbin, *Corbin on Contracts* § 752 (1960) (comparing waiver, modification, and estoppel). We conclude, however, that the facts of this case do not require application of any of the three principles.

■ There was no waiver because there was no evidence that the lessors actually intended to waive their right to declare a default under the lease. *See United New Mexico Bank,* 110 N.M. at 716, 799 P.2d at 585 (waiver is the voluntary relinquishment or abandonment of a known right). Although the lessors may have been entitled to declare a default much earlier than September 1986, their failure to do so apparently was due to the lessee's repeated assurances that construction would commence shortly.

■ Similarly, there was no evidence that the parties agreed to amend the lease to eliminate the requirement that the lessee would commence construction of a motel with due diligence. *See id.* (modification occurs when party requests and receives consideration for a waiver). There was no request for, or receipt of, consideration for a modification of the lease.

■ Finally, there was no estoppel, because the lessee did not show that it detrimentally relied on the lessors' delay in enforcing the terms of the lease. *See id.* at 717, 799 P.2d at 586 (waiver by estoppel occurs when party is misled to his prejudice into honest and reasonable belief that waiver is intended). On the contrary, the court could well have inferred from the evidence that the lessee concentrated its resources in other business ventures and virtually ignored the subject property.

Consequently, we uphold the trial court's findings that the notice of default was sufficient and that the lessee failed to correct the default within the stipulated time period.

Lessee also contests two other findings of the trial court, but it raises no new issues and its arguments do not require additional analysis.

The judgment appealed from in Cause No. 19,021 is affirmed. The order appealed from in Cause No. 19,443 is reversed, and the cause is remanded for further proceedings consistent with this opinion, including the setting of a reasonable attorney's fee

for the services of counsel for the lessors on this appeal.

IT IS SO ORDERED.

FRANCHINI and FROST, JJ., concur.